IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No. 09-20046-04** |
| ) | |
| **FREDRICO RAMSEY,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM AND ORDER

This matter is before the court on defendant Fredrico Ramsey's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 784) and defendant's Motion to Appoint Counsel (Doc. 817). Defendant claims that his attorney provided ineffective assistance of counsel before trial, during trial, and at sentencing.

### I. FACTUAL BACKGROUND

Defendant was charged with conspiracy to distribute and possess with the intent to distribute 100 grams or more of heroin with death and serious bodily injury resulting (Count 1); two related counts of distributing heroin (Counts 2 and 8); and one related count of possession of heroin with the intent to distribute (Count 9). (Doc. 285.) From November 22, 2010, to December 16, 2010, the court held a trial, and the jury found defendant guilty on all counts. On July 20, 2011, the court sentenced defendant to 292 months' imprisonment on Count 1 and 240 months' imprisonment on Counts 7, 8, and 9—all to run concurrently.

Defendant timely filed a Notice of Appeal. (Doc. 601.) On appeal, defendant argued the district court erred in denying his *Batson*[1] challenge and refusing to sever his trial from his codefendant, Verdale Handy. Defendant also argued the evidence was insufficient to sustain the conspiracy conviction and one of the convictions for possession with intent to distribute heroin. On April 17, 2013, the Tenth Circuit denied defendant's appeal on the *Batson* challenge and affirmed defendant's convictions and sentence. (Doc. 767.)

On October 3, 2014, defendant filed a Motion for Reduction of Sentence. (Doc. 780.) On November 3, 2014, the defendant filed a Motion for Order for Discovery. (Doc. 781.) The court denied both motions. (Doc. 783.) The court now considers defendant's pro se motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255.[2]

## II. LEGAL STANDARDS

Defendant argues that his counsel provided ineffective assistance during the pretrial phase, at trial, and at sentencing. The court applies the standard identified in *Strickland v. Washington*, 466 U.S. 668 (1984), when determining whether a habeas petitioner's counsel provided ineffective assistance. *See Romano v. Gibson*, 278 F.3d 1145, 1151 (10th Cir. 2002) (applying *Strickland*). Under *Strickland*, a petitioner bears the burden of satisfying a two-pronged test in order to prevail. First, he must show that his attorney's "performance was deficient" and "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. The court affords considerable deference to an attorney's strategic decisions and will "indulge in a strong presumption" that counsel's performance was not deficient. *Welch v. Workman*, 639 F.3d 980, 1010 (10th Cir. 2011) (quoting *Strickland*, 466 U.S. at 689). Counsel's performance is deficient if it falls "below an objective standard of

---

[1] *Batson v. Kentucky*, 476 U.S. 79 (1986).
[2] The court is mindful of defendant's pro se status and liberally construes his pleadings. *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) ("Finally, because Pinson appears pro se, we must construe his arguments liberally; this rule of liberal construction stops, however, at the point at which we begin to serve as his advocate.").

-2-

reasonableness . . . [based on] prevailing professional norms." *Strickland*, 466 U.S. at 688. To prove ineffective assistance of counsel, the petitioner must show "that counsel did not exercise the skill, judgment and diligence of a reasonably competent defense attorney," *United States v. Voigt*, 877 F.2d 1465, 1468 (10th Cir. 1989), and that counsel's decisions were "completely unreasonable, not merely wrong," *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999) (citing *Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir. 1997)). The reasonableness standard is purposefully and necessarily broad, for "[n]o particular set of detailed rules" would encompass all possible scenarios that an attorney might face. *Bobby v. Van Hook*, 558 U.S. 4, 7 (2009).

Under the second prong of *Strickland*, a habeas petitioner must demonstrate prejudice, which requires a showing that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* But, despite the existence of two prongs, "there is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the [petitioner] makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* at 697.

### III. ANALYSIS

Defendant claims twenty-two grounds of ineffective assistance and categorizes the grounds as: during the pretrial phase (Grounds 1–14); at trial (Grounds A–E); and at sentencing (Grounds I–III). Several of the grounds defendant argues overlap, and some are in the wrong category. Nevertheless, the court will address each ground, although not necessarily in the order presented in defendant's brief.

**A. Pretrial Investigation**

Defendant argues that his attorney failed to sufficiently investigate and challenge the government's case. Attorneys have a duty to make reasonable investigations on behalf of their clients. *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). However, attorneys are not required to investigate every fact and potential legal theory, as long as the decision not to investigate is reasonable. *Strickland*, 466 U.S. at 691. Thus, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.*

Because no two cases are alike, and because "[e]ven the best criminal defense attorneys would not defend a particular client in the same way," tactical decisions based on sufficient investigation are "virtually unchallengeable." *Id.* at 689–90. Furthermore, "[w]hen counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003). Attorneys are not expected to prepare for every remote possibility. *Harrington v. Richter*, 562 U.S. 86, 110 (2011). Lastly, the Tenth Circuit has stated that, even if the client and attorney disagree on the correct trial strategy, the "[d]isagreement over trial strategy is generally not a basis for ineffective assistance of counsel." *United States v. Ambort*, 282 F. App'x 714, 717 (10th Cir. 2008). Here, the court starts with the presumption that defendant's attorney was not constitutionally ineffective.

### 1. Victims' Causes of Death (Grounds 1, 13, and 14)

In Ground 1, defendant claims his counsel was ineffective by failing to investigate other possible causes of each alleged victims' overdose injuries and deaths. In Grounds 13 and 14, defendant claims counsel's pretrial performance was constitutionally deficient in that counsel failed to reasonably contest the victims' causes of death and that defense counsel should have had an independent autopsy conducted on each and every victim. (Doc. 784 at 4–5.) According to the sworn

-4-

affidavit of defendant's attorney, Kenton Hall, defense counsel considered that potential evidence and determined that he had no good faith basis to challenge the victims' causes of death. (Doc. 810-1 at 5.) Defense counsel stated that he "reviewed the discovery concerning the overdose deaths as well as the relative purity of the heroin that was distributed during the conspiracy, and confirmed that heroin at the 60% purity level or greater would likely result in death or serious bodily injury." (*Id.*) Rather than waste resources on a losing battle, defendant's attorney focused on proving his client was not part of the conspiracy. (*Id.* at 2 and 5.) The choice to focus on defendant's innocence—instead of the victims' causes of death—is a tactical decision, and this court cannot say the choice was unreasonable or deficient based on the circumstances and evidence.

### 2. Pretrial Interviews (Grounds 2 and 6)

Defendant argues that his counsel should have interviewed every cooperating witness. Defendant's counsel states that he did not conduct personal interviews of every witness, but he did review the reports of the interviews, as well as the proffer statements. (Doc. 810-1 at 2.) Counsel also reviewed the reports and other evidence, which tended to corroborate the substance of the interviews of the cooperating witnesses. (*Id.*)

Defendant has failed to show that he was prejudiced by his attorney's decision to not personally interview every witness. To be prejudiced, defendant must establish that there is a *reasonable probability* that the case would have turned out differently had his attorney interviewed every witness. First, as the government points out, defendant's counsel would have had to obtain permission from the cooperators' attorneys, which likely would not have been granted. Second, defendant has failed to satisfy his burden of proof because additional interviews would not have changed the witnesses' incriminating testimony—these witnesses testified against defendant, and he has not suggested that interviewing these witnesses would have changed what they said at trial.

-5-

Defendant specifically claims his counsel was ineffective by not conducting a pretrial interview of co-defendant Henry Nelson, despite the fact Mr. Nelson had a notarized affidavit proclaiming defendant's innocence. This claim fails under *Strickland* because defendant does not explain how a pretrial interview of Mr. Nelson would have changed the outcome of the trial. Mr. Nelson was cross-examined, and the notarized affidavit was admitted into evidence, along with other inconsistent statements the defense addressed during trial. Defense counsel's affidavit states that he had access to Mr. Nelson's prior statements, both written and recorded, and therefore did not need to interview Mr. Nelson. (*Id.* at 3.) Defendant fails to explain how conducting an in-person interview would have impacted the trial or defendant's decision to enter into a plea, nor is there any credible evidence before the court tending to show the outcome would have been different.

### B.  Assistance in Preparing a Defense

Defendant makes a number of ineffective assistance claims related to defense counsel's preparations before trial.

#### 1.  Preparing a Defense (Ground 10)

Defendant argues that his attorney "neglected to prepare any defense strategy whatsoever." (Doc. 784 at 4.) Defense counsel points out that the defense strategy he used was to show that defendant was not a member of the alleged conspiracy. Indeed, defense counsel used this strategy as a defense at trial, which contradicts defendant's assertion that his attorney neglected to prepare any defense strategy.

#### 2.  Potential Alibi (Ground 7)

Defendant claims that his attorney "neglected and refused" to investigate his alibi defense on the day the heroin was distributed at 5915 Cernech. (Doc. 784 at 3.) Defendant claims the alibi witness, Antonio Ramsey, "had timely informed counsel of [defendant's] whereabouts" on the day of

-6-

the heroin sale in question, but that defense counsel did not investigate the alibi defense or subpoena the alibi witness. (Doc. 784 at 3.) However, defense counsel swears in his affidavit that neither the defendant, nor the alleged alibi witness, contacted him regarding the alibi witness and defense. Additionally, the affidavit states, "[t]he only time Antonio Ramsey was mentioned by petitioner was to advise counsel that Antonio Ramsey dropped off petitioner at Henry Nelson's house so that Henry Nelson could give petitioner a ride on the day petitioner was alleged to have sold heroin from the location of 5915 Cernich."  (Doc. 810-1 at 3.) As such, defendant's sworn statements contradict his attorney's sworn statements.

If defense counsel failed to investigate an alibi witness who contacted him directly or who was otherwise made known to him, then defense counsel's legal assistance could be considered ineffective. Moreover, if Antonio Ramsey in fact would have testified that defendant could not have sold heroin on the day the heroin was distributed at 5915 Cernech, then the result of the trial may have been different. Defendant is entitled to a hearing on the issue of 1) whether Antonio Ramsey contacted defense counsel about a possible alibi and 2) whether Antonio Ramsey would have provided favorable testimony about the defendant's whereabouts.

### 3.  Withholding Discovery (Grounds 8 and 9)

In Ground 8, defendant claims his attorney "purposely withheld all of the discovery materials from the petitioner throughout the entirety of the proceedings held on this case beginning during the pretrial stage and lasted throughout trial and sentencing." (Doc. 784 at 4.) Defendant also claims in Ground 9 that his attorney failed to go over the discovery materials with him during the critical pretrial stage. Defendant's attorney maintains these claims are false. Defense counsel states that he reviewed all discovery materials and met with the defendant in person on multiple occasions, and he reviewed discovery with the defendant as it was made available by the government. (Doc. 810-1 at 4.) Given

that the court already is granting a hearing on the alibi-witness issue, the court will also allow evidence on the issue of whether defense counsel timely shared discovery with defendant before trial.

### C. Assistance at Trial

#### 1. Pole-Camera Footage (Ground 3)

Defendant next argues that his attorney did not adequately challenge the government's evidence.  Again, the court gives great deference to the attorney's trial strategy.  *Strickland*, 466 U.S. at 691.  Attorneys are not expected to challenge evidence if the objection is meritless.  *See United States v. Cronic*, 466 U.S. 648, 657 n.19 (1984).   Subjecting a jury to the "useless charade" of raising meritless objections can actually work against the client's interests and make the attorney appear obstructionist.  *Id.*

The government introduced as evidence video footage taken from a pole-camera showing defendant participating in drug transactions.  Defendant argues his attorney should have challenged the government's introduction of these videos into evidence.   However, defendant's attorney believed he had "no good faith basis, such as an alibi witness, upon which to challenge the evidence."  (Doc. 810-1 at 2.)  If the evidence at the hearing shows that Antonio Ramsey contacted defense counsel as a potential alibi witness, and if that alibi places defendant somewhere else at the time the pole-camera videos were taken, then the court will revisit whether defense counsel's decision to not challenge this evidence was objectively reasonable.

Absent proof that Antonio Ramsey contacted defense counsel as a potential alibi witness and that Antonio Ramsey would have provided an alibi, the court sees no legitimate basis upon which defendant's attorney should have moved for exclusion of the pole-camera video.  The video was obtained from lawfully-mounted recording devices.  And while defendant claims he is not the subject in the video, he made that claim at trial.  Deputy Justin Branner, who worked as an undercover officer

-8-

in the case, testified that defendant was in fact the individual who sold him drugs on two separate occasions. Additionally, Deputy Branner recalled defendant counting the money during the controlled buys in a particular way.

The court finds that defense counsel was objectively reasonable in not challenging the video, but the court may modify this finding if defendant proves that Antonio Ramsey contacted defense counsel as a witness who could have provided an alibi for the time-frame the videos were taken.

### 2. Voice Recordings (Ground 4) and Expert Analysis (Ground 5)

Defendant argues that his attorney should have objected to the voice recordings and compared those recordings to voice exemplars (Ground 4), and that defense counsel should have had the pole-camera footage and voice recordings analyzed by experts (Ground 5). In his affidavit, defense counsel states that there was no good faith basis upon which to object to the voice recordings, as the government laid the proper foundation prior to seeking admission of the evidence. (*Id.*) Defense counsel also did not feel he had a "good faith basis upon which to request funding and permission of the Court for such purpose. A request for funding of expert consultation in his area would have been purely speculative in that other evidence, such as testimony of cooperating witnesses and police officers, tended to corroborate the pole-cam and tape-recorded voice evidence." (*Id.* at 3.)

The court believes that defense counsel's rational for not objecting to the properly-admitted voice recordings, and his reason for not requesting expert analysis, are objectively reasonable decisions. Defendant may not like the fact that the jury heard voice recordings and watched video footage of the drug deals, but as the ultimate finders of fact, the jury gets to decide whether it was defendant, or someone else, on the voice recordings and in the video footage. Here, the jury believed it was defendant. Defendant has failed to show why objecting to the video footage and voice recordings

would have been anything more than a useless charade. In fact, raising these meritless objections could have been more damaging to defendant's case than helpful.

### 3. Crack Cocaine References (Ground 11)

Defendant claims he was prejudiced because defense counsel did not file a motion in limine to "keep out any and all reference to 'crack cocaine.'" (Doc. 784 at 4.) At trial, there was testimony by witnesses about controlled purchases of crack cocaine from members of defendant's heroin-selling conspiracy. However, defendant was not indicted for any crack cocaine offenses, so a motion in limine seeking to preclude mention of the controlled crack cocaine purchases from his co-conspirators would have had no merit. Defendant has failed to show that he suffered prejudice as a result of his attorney not filing a limine motion seeking to exclude all references to the term "crack cocaine" at trial.

### 4. Batson Challenge (Ground 12)

Defendant claims his attorney's legal assistance was ineffective because he failed to object to the racial composition of the jury under *Batson v. Kentucky*, 476 U.S. 79 (1986). The record, however, shows that defense counsel joined in the *Batson* challenge made by co-defendant Verdale Handy's attorney.[3] (Doc. 658 at 192.) The court denied the *Batson* challenge, and the Tenth Circuit affirmed that ruling. *See United States v. Ramsey*, 510 F. App'x 731, 735 (10th Cir.) *cert. denied*, 134 S. Ct. 714 (2013).

To the extent defendant is claiming his attorney failed to challenge any other peremptory strikes, defense counsel states that additional objections would have been groundless and in bad faith. The court agrees. Defendant's claim that his attorney was constitutionally ineffective by failing to raise a *Batson* challenge fails.

### 5. Victims' Causes of Death (Grounds A and E)

---

[3] The *Batson* challenge was raised because the prosecution used a peremptory strike to dismiss an African-American juror.

Defendant claims his attorney was ineffective during trial because he did not subpoena a medical examiner (Ground A) or challenge the drug evidence of the victims' causes of death (Ground E).[4]

The Tenth Circuit has said that "the speculative witness is often a two-edged sword. For as easily as one can speculate about favorable testimony, one can also speculate about unfavorable testimony." *Boyle v. McKune*, 544 F.3d 1132, 1138 (10th Cir. 2008). Defendants must provide specifics about the content of an expert witness's testimony. *See Cummings v. Sirmons*, 506 F.3d 1211, 1233 (10th Cir. 2007). Although hypothetical testimony might appear helpful, the prosecution's subsequent cross-examination could make calling the witness more damaging than beneficial. *Boyle*, 544 F.3d at 1139. "This is why the decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney." *Id.*

Defense counsel declares that he is unaware of any expert witness who could have given such medical testimony, and defendant offers no specifics about who the attorney should have called. Furthermore, there is nothing in the record to suggest this testimony would have been favorable to defendant, much less could have changed the trial's outcome—additional medical testimony could just as easily be incriminating as exculpatory. This is a classic example of a speculative witness, and the court has no basis to assume that expert testimony would favor defendant or that it would have changed the jury's verdict.

Furthermore, even if defense counsel was aware of a medical expert who could give testimony about the victims' past drug use, choosing not to call that witness or otherwise disputing that drug evidence was still sound strategy. Defense counsel's strategy focused on showing defendant was not part of the conspiracy and, therefore, could not be responsible for *any* deaths or injury resulting from

---

[4] These claims relate to defendant's claims in Grounds 1, 13 and 14 at the pretrial stage.

the overdoses. (Doc. 810-1 at 5.) Testimony from medical examiners would likely contribute nothing to that defense strategy.

### 6. Additional Alleged Trial Errors (Grounds B, C, and D)

In Ground B, defendant claims that because his attorney did not call any witnesses for his defense, including an alibi witness, his counsel was ineffective. In Ground C, defendant claims that his attorney's lack of preparation prevented his attorney from "adequately presenting a proper defense and from effectively cross-examining government witnesses, Bradley Scott Dawdy, Braden Bandel, Daniel Flores, Carine Stone, and government medical examiner witnesses, Dr. John Bradley, Dr. Christopher Long, and Dr. Erik Krag Mitchell." (Doc. 784 at 5.) In Ground D, defendant claims that his attorney was ineffective by not conducting pretrial interviews of "persons included but may not be limited to Bradley Scott Dawdy, Braden Bandel, Daniel Flores, Carine Stone, Rachel Teasly, Detective Justin Branner, Henry Nelson, Clifton Milton, Ferdinand Handy and Susan Sergheyev." (*Id.* at 6.)

Defendant fails to identify any witness (but for Antonio Ramsey) who should have been called on his behalf, nor does defendant detail the subject of any such witness testimony. Defendant lists witnesses he believes should have been interviewed before trial by his attorney, but defendant makes no detailed assertions as to how not interviewing these witnesses prejudiced him, and the court already found that the decision to not interview these witnesses was reasonable given the discovery defense counsel had reviewed.

Regarding defense counsel's failure to call Antonio Ramsey, the court has granted defendant an evidentiary hearing. Accordingly, in this limited regard, the court grants defendant an evidentiary hearing on Ground B to determine whether defense counsel was ineffective by failing to call Antonio Ramsey as an alibi witness.

Regarding defense counsel's cross examination of government witnesses, defendant's claims of error involve the overdose victims' causes of death. The court has found that defense counsel's decision to pursue an innocence defense was reasonable. Accordingly, to the extent defense counsel did not conduct cross examinations regarding the victim's drug overdoses, the court finds this decision to be reasonable.

### C.     Assistance at Sentencing

#### 1.   Victims' Causes of Death (Grounds I and II)

In Ground I, defendant claims that counsel's performance was constitutionally deficient because he failed to challenge the cause of the victims' deaths. In Ground II, defendant claims that counsel was ineffective for failing to conduct an investigation into the cause of death of the victims. These are essentially the same claims defendant alleged in Grounds 1, 13, and 14 (pretrial stage) and Grounds A and E (trial stage). As already discussed, defendant fails to meet the prongs of *Strickland* on the issue of refuting the victims' causes of death.

#### 2.   Conflict of Interest (Ground III)

Defendant claims defense counsel's performance caused "a conflict of interest against the movant throughout the sentencing phase of this case because of counsel's lack of sincere advocacy and lack of thoroughness in his preparations for trial prevented him from even attempting to contest either the drug evidence and or the alleged victims' purported causes of death." (Doc. 784 at 12.) Defendant claims that because of this conflict of interest, he received sentencing enhancements that did not apply to him. (Doc. 784 at 7.) Defendant does not specifically state what sentencing enhancements were applied to him as a direct result of the alleged "conflict of interest," and the court does not believe that defense counsel's choice of defense—defendant's innocence—created any sort of conflict of interest at sentencing.

### 3. *Burrage v. United States*

In his reply brief, defendant states that "Burrage should apply retroactively to his case on collateral review." (Doc. 812 at 1.) In *Burrage*, the Supreme Court held that a defendant cannot be liable for the death-results enhancement provision unless the use of the drug supplied was a but-for cause of the death. *Burrage v. United States*, 134 S. Ct. 881, 892 (2014).

Courts have decided that *Burrage* did not announce a new rule of constitutional law and that, even if it had, the Supreme Court did not make *Burrage* retroactively applicable. *Stewart v. United States*, No. 15-CV-73-JPS, 2015 WL 477226, at *2 (E.D. Wis. Feb. 5, 2015); *United States v. Bourlier*, No. 3:14cv609, 2014 WL 6750674, at *2 (N.D. Fla. Dec. 1, 2014); *Alvarez v. Hastings*, No. CV214-070, 2014 WL 4385703, at *1 (S.D. Ga. Sep. 5, 2014); *De La Cruz v. Quintana*, No. 14-28-KKC, 2014 WL 1883707, at *6 (E.D. Ky. May 1, 2014); *Taylor v. Cross*, No. 14-CV-304, 2014 WL 1256371, at *3 (S.D. Ill. Mar. 26, 2014); *Powell v. United States*, No. 3:09-CV-2141, 2014 WL 5092762, at *2 (D. Conn. Oct. 10, 2014)); *see also Minaya v. United States*, 41 F. Supp. 3d 343, 345 (S.D.N.Y. 2014). The court finds *Burrage* is inapplicable to defendant's case.

### D.     Request for Counsel

Finally, defendant requests that he be appointed counsel to assist him with this habeas proceeding. The court believes that the interests of justice favor appointing an attorney for the purpose representing defendant at the evidentiary hearing. The court will therefore appoint counsel for defendant and set a hearing to receive evidence on the following, limited issues:

> 1. Whether defense counsel was contacted by Antonio Ramsey or was otherwise informed that Antonio Ramsey could have provided an alibi for the drug transactions that occurred at 5915 Cernech (Grounds 7 and B).

    2. Whether Antonio Ramsey would have provided testimony at trial that defendant could not have sold heroin on the day the heroin was distributed at 5915 Cernech.

    3. Whether defense counsel timely shared discovery with defendant (Grounds 8 and 9).

The parties should be prepared to address and present evidence on both prongs of the *Strickland* test.

    **IT IS THEREFORE ORDERED** that defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody (Doc. 784) is denied in part and taken under advisement in part.

    **IT IS FURTHER ORDERED** that defendant's Motion to Appoint Counsel (Doc. 817) is granted.  The court will appoint counsel for defendant and set a hearing on defendant's claims of ineffective assistance of counsel, as set forth in this order.

    Dated this 16th day of September, 2015, at Kansas City, Kansas.

                                        s/ Carlos Murguia
                                          **CARLOS MURGUIA**
                                          **United States District Judge**